UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WILLIAM THROWER JR.,
ADMINISTRATOR of the ESTATE OF
WILLIAM THROWER SR., *deceased*,

Plaintiff,

v.

CORRECT CARE SOLUTIONS, *et al.*,

Defendants.

Civil No. 2:18cv56

## ORDER

This matter comes before the Court on a motion to dismiss filed by Defendants Thurman D. Barnes, the Hampton Roads Regional Jail Authority ("HRRJA"), and Michael W. McNeil (ECF No. 14), a motion to dismiss filed by Defendants Correct Care Solutions, LLC, Dennis Graves, Adrienne Nixon, Keyatta Manuel, and Mina Ko (ECF No. 43), a motion to dismiss by Defendant Jose'fina Holder (ECF No. 101), a partial motion to dismiss filed by Defendant HRRJA (ECF No. 104), and a motion to dismiss filed by Defendant Herbert E. Lavender (ECF No. 110). For the following reasons, ECF No. 14 and ECF No. 43 are **DENIED** as **MOOT**. The motion filed by Sergeant Holder, ECF No. 101, is **DENIED**. The motion filed by the HRRJA, ECF No. 104, is **DENIED**. The motion filed by Officer Lavender, ECF No. 110, is **GRANTED**.

### I.    PROCEDURAL BACKGROUND

On January 30, 2018, Plaintiff William Thrower Jr. ("Plaintiff") filed a complaint against a variety of defendants in connection with the death of his father, William Thrower Sr. ("Mr. Thrower), while Mr. Thrower was incarcerated at the Hampton Roads Regional Jail ("HRRJ").

1

Plaintiff filed an Amended Complaint on March 5, 2018. ECF No. 2. Defendants Thurman D. Barnes, the HRRJA, and Michael W. McNeil filed a motion to dismiss the Amended Complaint. ECF No. 14. Defendants Correct Care Solutions, LLC, Dennis Graves, Adrienne Nixon, Keyatta Manuel, and Mina Ko also filed a motion to dismiss. ECF No. 43.

After receiving leave of court, Plaintiff filed a Second Amended Complaint on October 31, 2018. ECF No. 98. The Second Amended Complaint named as Defendants Correct Care Solutions, LLC, William H. Ruby, DO (Medical Director at HRRJ), Donald Rhodes, MD (Regional Medical Director), Lisa Kabalan, RN, DON, Dennis Graves, HAS (Health Services Administrator at HRRJ), Adrienne Nixon, LPN, Keyatta Manuel, LPN, Lydia Shakespeare, LPN, Mina Ko, LPN, the HRRJA, David L. Simons, Eugene Taylor, III, Thurman D. Barnes (Lieutenant at HRRJ), Jose'fina Holder and Michael W. McNeil (Sergeants at HRRJ), Juan Parada (Officer at HRRJ), Jeremie L. Walton (Officer at HRRJ), and Herbert E. Lavender (Officer at HRRJ). *Id.*

In response to the Second Amended Complaint, Jose'fina Holder filed a motion to dismiss (ECF No. 101), the HRRJA filed a motion to dismiss (ECF No. 104), and Herbert E. Lavender filed a motion to dismiss (ECF No. 110). These motions can be decided without a hearing.

## II. FACTUAL BACKGROUND

The factual background is derived from details presented in the Second Amended Complaint. Mr. Thrower was an inmate at HRRJ. ECF No. 98 at ¶ 30. Plaintiff alleges that, on February 7, 2016, at age 69, Mr. Thrower submitted an emergency grievance complaining of "very sharp stomach pains" and an inability to eat or sleep. *Id.* ¶ 38. On March 19, 2016, Mr. Thrower submitted a handwritten emergency grievance stating: "I have been unable to sleep for

four days because my stomach . . . as of right now I haven't been able to Sh\*\*! I am in Real bad pain! Help me Please!" *Id.* ¶ 45. He also filled out a healthcare request that same day in which he stated "Can't Pass my Bowels it's been four days. I am in . . . Real Bad pain." *Id.* ¶ 53.

The following day, on March 20, 2016, Mr. Thrower collapsed and was pronounced dead in his cell. *Id.* ¶ 2. The Office of the Chief Medical Examiner determined the cause of death to be "[a]cute gallstone pancreatitis with hypertensive atherosclerotic cardiovascular disease contributing." *Id.* ¶ 73.

Allegations specifically involving the Defendants who have moved to dismiss this action follow. At this stage, factual allegations are construed favorably to Plaintiff.

A.  **Hampton Roads Regional Jail Authority**

Defendant HRRJA is a regional jail authority established by the cities of Chesapeake, Hampton, Portsmouth, Newport News, and Norfolk, Virginia. ECF No. 98 at ¶ 25. The HRRJA manages the HRRJ, and is sued in that capacity. *Id.*

B.  **Jose'fina Holder**

Jose'fina Holder was a sergeant at HRRJ who worked in Mr. Thrower's pod.[1] ECF No. 98 at ¶ 28. According to the Second Amended Complaint, Sergeant Holder's job responsibilities included "[s]upervis[ing] the work of Jail Officers . . . [s]upervis[ing] the monitoring of daily activities of inmates by Jail Officers . . . [o]bserv[ing] inmates' behavior to ensure an orderly and safe environment . . . [h]andl[ing] inmate problems and complaints and refer[ing] to appropriate party . . . [and d]irect[ing] and help[ing] conduct security checks of assigned areas." *Id.*

As noted above, Plaintiff alleges that, on March 19, 2016, Mr. Thrower submitted a handwritten emergency grievance that stated "I have been unable to sleep for four days because my stomach . . . as of right now I haven't been able to Sh\*\*! I am in Real bad pain! Help me

---

[1] A pod is a self-contained housing unit within the jail.

3

Please!" *Id.* ¶ 45. This grievance was sent to Segeant Holder, who marked the box labeled "did not meet definition of an emergency grievance return to inmate." *Id.* ¶ 46. Sergeant Holder wrote on the form, "you do not use profanity on documents. Resubmit as a sick call." *Id.* According to the Second Amended Complaint, Sergeant Holder has stated in interrogatories that she also checked the box labeled "forward to medical supervisor for response" and that she placed the request in the medical box for a response by medical staff. *Id.* ¶ 47. She also entered the grievance into an electronic database. *Id.* ¶ 48.

The Second Amended Complaint states claims against Sergeant Holder for denial, delay, and withholding of medical care in violation of Mr. Thrower's rights and supervisory liability for deliberate indifference to Mr. Thrower's rights under the Eighth and Fourteenth Amendments to the United States Constitution. Sergeant Holder seeks to dismiss these claims.

C.  **Herbert E. Lavender**

Herbert Lavender was a correctional officer at HRRJ who worked in Mr. Thrower's pod. ECF No. 98 at ¶ 28. According to the Second Amended Complaint, Officer Lavender's job duties included "supervis[ing] inmates in all activities of jail routine . . . [m]onitor[ing] and observ[ing] inmate behavior . . . [m]ak[ing] regular rounds of areas accessible to inmates to observe activities, [c]onduct[ing] security checks . . . [o]bserv[ing] inmates' behavior to ensure an orderly and safe environment . . . [r]eport[ing] all incidents or problems to the Watch Commander or other supervisors . . . [p]erform[ing] duties under the direct supervision of an assigned Sergeant or Lieutenant, who provides guidance and direction." *Id.*

Plaintiff alleges that Officer Lavender made a security inspection of Mr. Thrower's pod on March 20, 2016 at 9:30 a.m. and noted no problems or anything abnormal with Mr. Thrower's condition. *Id.* ¶ 76. Plaintiff alleges that Mr. Thrower's condition, which included "abdominal

pain so bad that he was 'unable to sleep for four days' . . . would have been open and obvious" to Officer Lavender. *Id.* ¶ 80. Plaintiff alleges that Mr. Thrower made verbal complaints to the correctional officer defendants "concerning the excruciating pain during the five days immediately prior to his death, and particularly on March 20, including finally complaints of chest pain." *Id.* ¶ 81.

### III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. "To survive a Rule 12(b)(6) motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Cook v. Howard*, 484 F. App'x 805, 810 (4th Cir. 2012).

### IV. ANALYSIS

#### A. The Motions to Dismiss that Predate the Second Amended Complaint are MOOT.

The Motion to Dismiss filed by Thurman D. Barnes, the HRRJA, and Michael W. McNeil (ECF No. 14) was filed before the Second Amended Complaint and is accordingly **MOOT**. The Motion to Dismiss filed by Correct Care Solutions, LLC, Dennis Graves, Adrienne Nixon, Keyatta Manuel, and Mina Ko (ECF No. 43) also predates the Second Amended Complaint and is **MOOT**. Separate Orders has found these Motions moot. See ECF Nos. 123, 124.

5

## B. The Hampton Roads Regional Jail Authority's Motion to Dismiss is DENIED.

The Hampton Roads Regional Jail Authority argues that it is entitled to sovereign immunity from Plaintiff's negligence claims. ECF No. 104. Under Virginia law, sovereign immunity protects cities and counties, but does not necessarily protect the entities they create. *Jean Moreau & Assocs v. County Health Care Comm'n*, 720 S.E.2d 105, 112 (Va. 2012). Such entities must have the attributes of a "municipal corporation" to be entitled to the protections of sovereign immunity. *Carter v. Chesterfield County Health Comm'n*, 527 S.E.2d 783, 786 (Va. 2000).

A municipal corporation is an entity "created for political purposes and endowed with political powers to be exercised for the public good in the administration of local civil government." *Dowdy v. Pamunkey Reg'l Jail Auth.*, No. 3:14cv3, 2014 WL 2002227, at *2 (E.D. Va. May 15, 2014) (quoting Black's Law Dictionary 1113 (9th ed. 2010)). To determine whether a jail authority has the status of a municipal corporation for immunity purposes, the court must first determine how many attributes of a municipal corporation the authority possesses and then determine the entity's purpose in the case at bar. *Id.* (citing *Hampton Rds. Sanitation Dist. Comm'n v. Smith*, 68 S.E.2d. 497, 500 (Va. 1952)). The six attributes of a municipal corporation are:

> (1) Creation as a body corporate and politic and as a political subdivision of the Commonwealth;
> (2) Creation to serve a public purpose;
> (3) Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenues, personal and real property;
> (4) Possession of the power of eminent domain;
> (5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state; and
> (6) Management of the corporation vested in a board of directors or a commission.

6

Case 2:19-cv-00373-RAJ-DEM Document 131 Filed 09/23/19 Page 7 of 17 PageID# 1663

*City of Richmond v. Richmond Met. Auth.*, 172 S.E.2d 831, 832 (Va. 1970).

Virginia federal courts are split as to whether a jail authority is entitled to sovereign immunity protections. In *Dowdy*, this Court held that the Pamunkey Regional Jail Authority ("PRJA") possessed enough of the factors of a municipal corporation to be treated as one. 2014 WL 2002227, at *3. Specifically, the PRJA was found to have a public purpose, a governing body, and acquire property, appoint officers and employees, make contracts, undertake projects, accept governmental grants and loans, sue and be sued, issue tax-free bonds, has officers with arrest powers, and is exempt from taxation. *Id.* The PRJA was construed as performing a governmental function when it operated a jail, entitling it to immunity. *Id.* (citing *Franklin v. Town of Richlands*, 170 S.E. 718, 719 (Va. 1933)).

In *Haleem v. Quinones*, the United States District Court for the Western District of Virginia agreed with *Dowdy* in finding that Virginia's jail authorities are entitled to sovereign immunity. No. 5:17cv3 2017 U.S. Dist. LEXIS 162081 (W.D. Va. Sept. 30, 2017). Nothing in the relevant Virginia Supreme Court cases was found to require that an entity possess all six of the above-listed attributes to be considered a municipal corporation. *Id.* at 10–11. In that case, the jail authority lacked two of the six attributes: the power of eminent domain and designation as a political subdivision. *Id.* at 12–13. The court reasoned that the lack of eminent domain powers was insignificant, because the member localities had the power and could provide the needed facilities to the jail authority. *Id.* at *16. Regarding the jail authority's designation, the court concluded that it could not have been the intent of the General Assembly to create a scheme "whereby the only entity not entitled to sovereign immunity for the operation of a local jail facility in Virginia is a regional jail authority." *Id.* at *17.

7

These decisions departed from an earlier case from this Court, which held held that all six attributes from *City of Richmond* are "essential to viability as a municipal corporation." *Heckenlaible v. Va. Reg'l Peninsula Jail Auth.*, No. 4:06cv25, 2006 WL 3196750, at *2 (E.D. Va. Nov. 1, 2006). Finding that the jail authority lacked the power of eminent domain and the designation as a body corporate and politic, the decision concluded that the authority was not entitled to sovereign immunity. In *Boren v. Northwestern Regional Jail Authority*, the court relied on *Heckenlaible* in finding that a regional jail authority was not entitled to sovereign immunity because it did not possess all six attributes of a municipal corporation. No. 5:13cv13, 2013 WL 5429421, at *4–5 (W.D. Va. Sept. 30, 2013).

More recently, in *Heywood v. Va. Peninsula Reg'l Jail Auth.*, this Court found that a regional jail authority's "powers and characteristics disfavor[ed] finding that it should be treated as a municipal corporation." No. 2:15cv195, 2015 WL 5026188, at *6 (E.D. Va. Aug. 21, 2015). In *Heywood*, in contrast to *Heckenlaible*, the Court stated that "it is not a condition precedent that all six [*City of Richmond* attributes] be present to conclude that an entity is a municipal corporation." *Id.* (citing *Hampton Roads Sanitation Dist. Comm'n v. Smith*, 68 S.E.2d 497, 501 (Va. 1952)). Consistent with prior opinions regarding jail authorities, the Court held that the Peninsula Regional Jail Authority possessed four of the six attributes. *Id.* However, where the *Haleem* decision considered the missing factors to be insignificant, the *Heywood* decision considered the present factors to be unimportant, stating that

> most of the attributes which [the jail authority] does enjoy are found in private corporations as well. Fully private jails have the power to sue and be sued, to enter into contracts, to hold and dispose of real and personal property, to borrow money and issue bonds, and to manage their affairs by a board of directors.

*Heywood*, 2015 WL 5026188, at *6.

8

The Court concludes that the *Heywood* decision provides the most persuasive reasoning. The authority possessed by the HRRJA does not differ in a meaningful way from a private corporation. A private corporation possesses the same powers to sue and be sued, enter into contracts, hold property, and the powers that have been delegated to the HRRJA. The primary factors that separate a municipal corporation from a private entity are the designation as a body politic and the power of eminent domain. Those two factors are missing in this case. This Court declines to guess at the General Assembly's intentions in not designating jail authorities as a political subdivision. The Court instead notes that the "General Assembly clearly knows how to denominate an authority as a 'political subdivision' when it wishes to do so.'" *Short Pump Town Ctr. Cmty. Dev. Auth. v. Hahn*, 554 S.E.2d 441, 447 (Va. 2001) (concluding that a community development authority was not a municipal corporation because it was not designated as a political subdivision).

Accordingly, the HRRJA is not entitled to sovereign immunity. Therefore, its partial motion to dismiss must be **DENIED**.

### C. Jose'fina Holder's Motion to Dismiss is DENIED.

Sergeant Holder also seeks dismissal of the claims against her. She argues that she should be entitled to sovereign or qualified immunity. ECF No. 102 at 9–15. She further argues that Plaintiff has failed to adequately state claims for deliberate indifference or negligence. *Id.* at 4–7.

Sergeant Holder contends that she is entitled to sovereign immunity as an employee of the HRRJA. In Virginia, employees of local government are only entitled to sovereign immunity if the employing entity has immunity for the function performed by the employees. *Messina v. Burden*, 321 S.E.2d 657, 662–64 (Va. 1984). As already established, the HRRJA lacks

sovereign immunity in this case. Accordingly, Sergeant Holder's sovereign immunity claim fails at step one of the analysis.

Sergeant Holder argues that she is entitled to qualified immunity from the § 1983 claims. The doctrine of qualified immunity "shields government officials performing discretionary functions from liability for civil damages, insofar as their conduct does not violate clearly established rights of which a reasonable person would have known, in order to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" *Johnson v. Moore*, No. 3:10cv537, 2011 WL 1637079, at *4 (E.D. Va. Apr. 29, 2011) (citation omitted). Qualified immunity is an affirmative defense, and "[i]n resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first [prong] asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's [or official's] conduct violated a [federal] right[.]'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). In other words, the right that the official is alleged to have violated must be sufficiently clear so that "a reasonable official would have understood that what he [or she] is doing violates that right." *Johnson*, 2011 WL 1637079, at *4 (citation omitted). In addressing the two prongs, district courts have discretion in deciding which of the two steps of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court addresses first whether the Second Amended Complaint states a claim that Sergeant Holder violated Mr. Thrower's constitutional rights. There are two Eighth Amendment claims alleged against Sergeant Holder. Count IV alleges that Sergeant Holder deprived Mr.

10

Thrower of his civil rights when she "denied, delayed, and withheld medical care." ECF No. 98 at ¶¶ 189–199. Count V alleges that Sergeant Holder has supervisor liability for her subordinates' deliberate indifference. *Id.* ¶¶ 200–06.

The United States Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes" a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Serious medical needs are those that are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). It is constitutionally impermissible to delay care if "the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). "[T]he Eighth Amendment requires more than *some* action: It requires *reasonable* action." *Cox v. Quinn*, 828 F.3d 227, 237 (4th Cir. 2016) (emphasis in original).

For a jail detainee to establish deliberate indifference by jail officials, he or she must show that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and also that the officials drew the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *cf. Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) ("Direct evidence of actual knowledge is not required. Accordingly, prison officials may not simply bury their heads in the sand and thereby skirt liability.") (citation omitted). "A prison official is not liable if [she or ]he knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). This means that an official "is not subjectively reckless where, although [the official] is aware of the existence of a general risk, [the official] is unaware that his

11

[or her] conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

Sergeant Holder argues that she responded reasonably to Mr. Thrower's emergency grievance request when she marked it to be forwarded to the medical supervisor for a response and recorded the grievance in an electronic database. However, the Second Amended Complaint alleges that the HRRJA "had a problematic system for requesting medical care" and that "[i]nmates/detainees were routinely forced to file "emergency grievances" . . . simply to try to get their medical needs met in the first place." ECF No. 98 at ¶ 36. According to the Second Amended Complaint, inmates were required to undertake these measures because "paper sick call requests and electronic requests . . . were not timely or appropriately administered, resulting in inmates' medical needs simply going unmet." *Id.* In other words, Plaintiff alleges that Sergeant Holder's actions were highly likely to cause a dangerous delay in medical care being provided to Mr. Thrower. Sergeant Holder did a supervisory round of Mr. Thrower's pod on the day of his death. At the time of that inspection, she knew of Mr. Thrower's emergency grievance, but there is no indication that she made any effort to check on him. These facts, along with the obvious urgency with which Mr. Thrower communicated his concerns, states a claim for a constitutional violation at this early stage of the litigation.[2]

---

[2] Sergeant Holder also argues that Mr. Thrower's emergency complaint did not appear life-threatening. The deliberate indifference standard does not require a life-threatening harm, but merely requires some harm. *See Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017).

Moreover, Sergeant Holder argues that not every inmate "complaint of an ache, constipation, runny nose, etc." can be treated as an emergency just because the inmate claims emergency. Although this is true, Mr. Thrower complained of stomach pain so bad he could not sleep for four days, a much more compelling and potentially dangerous threat than the conditions that Sergeant Holder dismissively references.

The Court also notes that Plaintiff pleaded that Mr. Thrower's emergent condition on March 20 was "open and obvious" and that a person suffering from acute pancreatitis "usually looks and feels very ill." ECF No. 91 at ¶ 79.

12

The Court next turns to whether the constitutional right has been clearly established. For the purpose of qualified immunity, a right must be "clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Adams v. Ferguson*, 884 F3d 219, 227 (4th Cir. 2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). However, as the United States Supreme Court recognized in *Estelle*, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle*, 429 U.S. at 104. Prison officials depriving an inmate of emergency care violates clearly established rights, and Plaintiff has adequately stated a claim for such deprivation. Accordingly, the Court concludes that Sergeant Holder is not entitled to qualified immunity on Count IV.

Regarding Count V, Plaintiff's assertion that Sergeant Holder should be held liable under § 1983 as the correctional officers' supervisor compels analysis of three factors: "(1) that the supervisor had actual or constructive knowledge that [her] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see also Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984); *Harris v. Northern Neck Regional Jail*, Civil Action No. 3:07-CV-701, 2008 WL 4468080, at *3 (E.D. Va. Oct. 1, 2008).

"[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Constructive knowledge may be evidenced by

13

the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). In *Woodson*, "[t]he failure to investigate two instances of heat related deaths [was not] considered to be persistent and widespread." *Woodson v. City of Richmond*, 88 F. Supp. 3d 551, 569 (E.D. Va. 2015).

The Second Amended Complaint alleges that Sergeant Holder was aware of numerous prior constitutional violations within the jail and had failed to take action. These violations allegedly include "multiple other deaths from preventable conditions that had occurred at the Jail [and] the plethora of other grievances describing severe medical conditions that were being ignored at the Jail concerning other inmates before Thrower's death." ECF No. 91 at ¶ 202. The Second Amended Complaint alleges that the response by Sergeant Holder and the other supervisory Defendants was woefully inadequate, and that Defendants all failed to intervene on Mr. Thrower's behalf or to provide him with any medical care. *Id.* ¶ 203. Plaintiff alleges causal links of Mr. Thrower's preventable death that are similar to prior deaths at the jail. *Id.* ¶ 204.

Sergeant Holder responds that Plaintiff failed to specify that her subordinates engaged in the prior instances documented in the Second Amended Complaint. However, Plaintiff is not required to have all the answers at this early stage, before any discovery has been undertaken. Plaintiff is required only to state a plausible claim to relief. The Second Amended Complaint states a plausible claim in Count V. Plaintiff has adequately stated a claim with respect to Count V, and Sergeant Holder is not entitled to qualified immunity. For these reasons, Sergeant Holder's motion to dismiss, ECF No. 101, must be **DENIED**.

D. **Herbert Lavender's Motion to Dismiss is GRANTED.**

Officer Lavender also filed a motion to dismiss. He argues that Plaintiff fails to state a plausible deliberate indifference claim against him in Count IV.

Plaintiff relies on two principal allegations to support his claim: first, that Officer Lavender inspected Mr. Thrower's pod on the day of Mr. Thrower's death, and second, that Mr. Thrower's condition was open and obvious. These allegations are not enough to state a claim for deliberate indifference.

First, Plaintiff concedes that there are no allegations in the Second Amended Complaint that Officer Lavender had any knowledge of Mr. Thrower's medical complaints. Any notice to Officer Lavender of Mr. Thrower's condition would have had to come from Officer Lavender's inspection of Mr. Thrower's pod at 9:30 a.m. on March 20, 2016. Plaintiff alleges that Officer Lavender did not "note[] anything abnormal on the pod or any problems with Thrower." Compl. ¶ 76. Plaintiff does not allege that Officer Lavender spoke to or came into contact with Mr. Thrower.

Plaintiff's allegation that Mr. Thrower would have appeared ill to Officer Lavender cannot support a deliberate indifference claim absent any other facts as to Officer Lavender's knowledge of Mr. Thrower's condition. That Mr. Thrower had trouble defecating and trouble sleeping would not have necessarily been open and obvious to an officer inspecting an entire pod on a single morning, especially absent any allegations that the officer spoke to Mr. Thrower.

Officer Thrower's involvement is contrasted with the other Correctional Defendants. For example, Officer Juan Parada is alleged to have conducted over seventy security rounds of Mr. Thrower's pod on March 18, March 19, and March 20. Officer Parada is alleged to have spoken to Mr. Thrower about his condition and is alleged to have spoken to other inmates about Mr.

15

Thrower's condition. Compl. ¶ 68. Compared to the allegations involving other Correctional Defendants, it is clear how that Officer Lavender had little involvement in this case.

Plaintiff also advances state law claims against Officer Lavender for gross negligence (Count II) and for willful and wanton negligence (Count III). Plaintiff's allegations against Officer Lavender fail to support these claims as well. The cases cited by Plaintiff are inapposite. In each, either the defendant was acutely aware of the risks posed to those to whom the defendant owed a duty, or the risk was within common knowledge. *See Volpe v. City of Lexington*, 708 S.E.2d 824, 829 (Va. 2011) ("City Manager Ellestad testified that he knew the river could be particularly dangerous . . ."); *Chapman v. City of Virginia Beach*, 475 S.E.2d 798, 802 (Va. 1996) (finding that the risk was "within the common knowledge of the jury"); *Burns v. Gagnon*, 727 S.E.2d 634, 647 (Va. 201) (submitting gross negligence to the jury where the defendant not only knew about the risk of harm, but promised to "take care of it"). In this case, Plaintiff has failed to adequately allege that Officer Lavender had any knowledge of Mr. Thrower's medical conditions. Accordingly, Officer Lavender's Motion to Dismiss must be **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, ECF No. 14 and ECF No. 43 are **MOOT**. ECF No. 101 is **DENIED**. ECF No. 104 is **DENIED**. ECF No. 110 is **GRANTED**. The Court **DIRECTS** the parties to contact the Courtroom Deputy to schedule a Rule 16(b) scheduling conference. At that conference, the parties will be directed to participate in a settlement conference before one of the Court's Magistrate Judges.

17

The Clerk is directed to forward a copy of this Order to counsel of record.

**IT IS SO ORDERED.**

_____
Arenda L. Wright Allen
United States District Judge

April 3rd, 2019
Norfolk, Virginia

17